Milligan, J.,
delivered the opinion of the Court.
This is an indictment in the Circuit Court of Rutherford County, against Charles Brothers, a free man of color, as laid in the indictment, for horse-stealing. The jury found a verdict of guilty, and fixed the term of the prisoner’s confinement in the Penitentiary for three years. There was a motion for a new trial, which was overruled by the Court, and judgment pronounced according to the finding of the jury; from which an appeal in error was prosecuted to this Court.
The proof shows that the alleged offense was committed in April, 1864, and that the prisoner was, at the time, the slave of Mrs. Brothers, hut that he, for some time previous to the commission of the alleged offense, and at the time, had been acting as a free man, and occasionally working fpr his mistress under a contract of hire.
The Circuit Judge, among other things not excepted to, in substance, charged the'jury: “That if it appeared from the proof, that the defendant at the time of the commission of the alleged offense, was, in fact, a slave, the Court would, nevertheless, have jurisdiction to try the case, but that the punishment would be different from that inflicted upon a free man of color. *203 In that event, the jury could inflict such punishment as they might deem proper, provided it did not extend to life or limh; and as confinement in the Penitentiary was one mode of punishment recognized by our laws, the jury, if they saw proper, could fix the punishment of the defendant by confinement in the Penitentiary for any period, provided it he not less than one year, or such other punishment as they might see proper.”
To this part of the charge there is exception, and it is insisted here that the Circuit Court had no jurisdiction to try the ofíense charged in the indictment, when committed by a slave; and further, if the Court had jurisdiction, it could not, in such a case, punish by confinement in the Penitentiary.
1. The first question that presents itself for our determination, is, whether or not the prisoner was, by law, a free man of color at the time it is alleged this offense was committed, so as to be proceeded against as such in this prosecution. Much might be said in relation to the status of the slaves in this State, in consequence of the military operations of the United States, but we do not deem it necessary, or pertinent in the determination of this case, to enter into that wide and uncertain field of discussion. It is enough for all the practical purposes of this case, that the people of the State felt it necessary formally to abolish the legal existence of slavery in Tennessee, by amending its Constitution. Prior to the 22d of Eebruary, 1865, the time at which the amendments to the Constitution were ratified, slavery had little or no practical existence in the State, but its legal existence was such as, *204 at least, for many purposes, to compel the Courts to recognize it as a subsisting institution. It still existed, so to speak, in a quasi legal form; and the question now presented, is, was that such a feeble state of servitude as would subject the prisoner to criminal prosecution as a free man of color? We think not. The case of James vs. The State, 9 Hum., 308, which was in conformity to the uniform ruling of this Court, is decisive of this question. This was a case in which a negro was indicted as a free man of color, for selling spirituous liquors; and the proof showed, that his master, about a year before, had told him he might go and be free, and from that time he had been acting as a free man. Judge Grreen, in delivering the opinion of the Court, said: “The only question here is, whether, upon this proof, the plaintiff in error is indictable for a misdemeanor as a free man. And we think he is not. It is true, as his Honor told the jury, this negro has an incomplete right to his freedom, so that his master could not re-assert his dominion over him, so as to make him a slave. And if the master refuse to apply to the County Court for his emancipation, any other person might petition in his behalf; but, until this is done, and he is emancipated according to the forms of the laws, he does not become a free man.”
And again, the learned Judge, in the same opinion, says: “In view of the law, the negro- is not a free man until the State, through the proper tribunal, consents to his freedom.”
Waving, for the present, any effect the late war *205 produced in the legal existence of slavery in Tennessee, it can be of no importance, whether the assent of the State to the emancipation, of a slave he given through the legally constituted tribunals of the country, or by the people at the ballot-box, or whether it be given for the emancipation of one or the whole. The principle is the same; and, in this view of the case, conclusive, as we think, of the question now under consideration.
2. The question being determined that the prisoner, in legal contemplation, was a slave, had the Circuit Court jurisdiction of the case? Prior to the adoption of the Code, it is well settled that the Circuit Court had no original jurisdiction of offenses committed by slaves, except in capital cases. In the case of Nelson vs. The State, 10 Hum., 518, 531; and again in the case of Ann vs. The State, 11 Hum., 154, the Court says: “It is true, an indictment against a slave for murder, does not include a charge for manslaughter, because by the Act of 1819, ch. 35, sec. 1, murder committed by a slave is declared to he capital; and by the Act of 1835, ch. 19, sec. 9, exclusive original jurisdiction is given to the Circuit Courts, of all offenses committted by slaves, which are punisable with death, and as manslaughter is not so punishable, the Circuit Court has no jurisdiction thereof.”
Both these cases were indictments for murder, and involved the jurisdiction of the Court to take cognizance of manslaughter. But in the case of Bennett vs. The State, 1 Swan, 411,- the5 prosecution was *206 for larceny against one, who, on the trial, was proved to he a negro of “black complexion,” and without any other proof of servitude, except the legal presumption that arose from his color, the Court held that there was an utter want of jurisdiction in the Circuit Court to try the cause.”
The trial of crimes or offenses ' committed by slaves, prior to the Code, not punished by death, was fully provided for by various Statutes, most of which have been substantially carried into the Code. By the Act of 1741, ch. 24, sec. 48, 1 Scott Bev., 74, 75, any crime committed by a slave, was to be tided before three justices and four freeholders and slaveholders, and punished at their discretion.
By the Act of 1783, ch. 14, sec. 2, 1 Scott Bev., 279, trivial offenses were to be tried before one justice, and punished not exceeding forty lashes. But, if the justice was of opinion that the offender deserved greater punishment, he was to commit him to jail, to be tried as heretofore. By the Act of 1815, ch. 138, sec. 1, 2 Scott Bev., 246, 247, note in Nicholson and Caruther’s Com., the 48th section of the Act of 1741, is repealed; and it is provided that offenses committed by slaves, shall be tried- before three justices and nine freeholders and slaveholders, and if found guilty, they shall pass such judgment according to their discretion, as the nature of the crime or offense, shall require.
By the Act of 1819, ch. 85, sec. 1, murder, arson, burglary, rape and robbery were declared capital, and punished with death; and all other offenses are *207 to be punished as heretofore, provided punishment in no case, shall extend to life or limb, except in the cases above, mentioned.
Thus the law, .with reference to this peculiar class of offenses, seems to have stood prior to the adoption of the Code. See Nelson vs. The State, 531, 532. The Code has made but few material changes. The old Statutes are collated, re-modeled, and with some addition and enlargement, carried into the Code. The domestic tribunal of three justices and nine freeholders and slaveholders, is altogether dispensed with, and the jurisdiction conferred upon the Circuit and Criminal Courts, and a single magistrate. By sec. 2629, it is provided, that “The Circuit and Criminal Courts shall have exclusive jurisdiction of all capital offenses, committed by slaves.” And by sec. 2630, it is declared -that “all other offenses committed by slaves, may be tried by a single justice of the peace.”
Section 2631, declares, that “Every indictment against a slav^ for murder, shall be held to include a charge of manslaughter, and the Circuit and Criminal Courts shall have jurisdiction in the trial of slaves charged with manslaughter.”
This section contains the only clause to be found in the slave code, which extends the original jurisdiction of the Circuit' Court, in cases of crimes committed by slaves; and it must be construed as an exception to the two preceding sections. Before the adoption of the Code, the Circuit Court, as was held in the cases of Nelson vs. The State, and Ann *208 vs. The State, had no jurisdiction of manslaughter, when committed by a slave, even when the charge in the indictment was for murder, and mitigated by the evidence, to manslaughter. To meet this omission in the former Statutes, and to enable the Circuit Court, after it' had lawful jurisdiction of a cause, under the charge of a capital offense, to punish the accused for the less offense, without first referring the case to . an inferior tribunal, was most clearly the intention of the Legislature. But the original jurisdiction of the Circuit and Criminal Courts, was not extended to any other class of cases, as fully appears by the following sections of the Code: By sec. 2640, it is provided: “When a slave is charged with a misdemeanor, or other offense, not capital, which to the magistrate, before whom he is carried for examination, shall appear to be of so trivial a nature, as not to deserve a greater punishment than forty stripes, he may forthwith issue subpoenas, if necessary, 'to compel the attendance of witnesses, and proceed to try the accused in a summary way, and pass sentence and award execution according to law.”
Following this section, and with direct reference to it, sec. 2613 provides: “But if the offense for which the slave is ‘apprehended, appears to the justice to be of such a nature, as to deserve any other or greater punishment than forty stripes, he shall commit him to jail for trial; or, on the application of the owner, admit him .to bail, he giving bond in double the value of the slave, for the slave’s appearance at Court.”
*209 Prom those several provisions of the Code, when taken together, it is apparent that all offenses committed by a slave, except such as are expressly excepted by the Statute, and such as are capital and punishable by death, might be examined before a single justice of the peace; and if the offense was in its nature, trivial, and in his opinion, not deserving greater punishment than forty stripes, he could render judgment and award execution, which was a final disposition of the cause, unless the owner saw proper to appeal from the justice’s judgment, to the Circuit Court, which, by sec. 2641, he was authorized to do.
But, if the case appeared to the Justice to be of such a nature as to deserve any other or greater punishment than forty stripes, he might commit the slave to jail, or hold him on bail to appear at the Circuit Court, to be tried by a jury, who, in the event of his conviction, in their discretion, might inflict such punishment as they deemed adequate to the offense; not, however, extending to life or limb. See sec. 2623.
The punishment in this class of cases seems to be -discretionary with the tribunal trying the case; and the trial by jury comes in the place of the trial before three justices and nine freeholders and slaveholders, as provided under the Act of' 1815, ch. 138, sec. 1. But, without elaborating this case further, we are unable to see that any • additional original jurisdiction, in cases of offenses- committed by slaves, not punishable by death, and not expressly excepted in the Statute, is conferred on the Circuit or Criminal Courts; and it *210 therefore follows, that in this case, the Circuit Court had no jurisdiction of the cause.
Slaves, as heretofore, being recognized by the laws of Tennessee, as reasonable and intelligent human beings, were in some sense, amenable to the criminal laws, and, at the same time, being held as property in the owners, it was the policy of the law to inflict punishment on them, for crimes committed, in the most summary manner, and so, as least, to affect the owner’s interest in the criminal. Hence, it was the practice, and, indeed, the law, not to confine them in the Penitentiary; nor does the Code favor such a practice, or mode of punishment. Sec. 2626, provides: “If three or more slaves counsel, or advise, or conspire, to rebel, or make insurrection, or shall plot or conspire to murder any person, every such consulting or conspiracy shall be punished, at the discretion of the Court, with death, or with stripes and confinement in the county jail, according to the extent of the plot, or the participation of the accused therein.”
Here, fo a crime, which, in the discretion of the Court, may be punished with death, and which, in grade, is next, perhaps, to murder, in a slave, when not punished with death, is,, by law, only punished by stripes and confinement in the county jail. Much more would the same reason apply in the punishment of crimes of a lower grade.
In the view we have taken of this case, we do not deem it necessary to determine whether confinement in the Penitentiary, is a heavier imposition of punish- *211 meat, than tbe infliction of stripes.. Tbe legal status and social condition of tbe person, upon whom tbe punishment is imposed, would, doubtless, constitute an element to be considered in determining tbe weight and degredation of tbe punishment inflicted. But, certainly, a crime committed by a slave, tbe punishment of which is fixed by law, could not, after his freedom was declared, be punished with any heavier or more degrading punishment. Such an interpretation of the law, would, not only be to give it an ex post facto operation, but it would be in direct violation of the 45th section of the Code. Nor do we feel called upon, in this case, to give any opinion, as to the effect of the amendments to the constitution, abolishing slavery in the State, upon the law prescribing the punishment of slaves, for crimes committed under the laws and constitution, while they recognized slavery. This is a matter which addresses itself as much to the Legislature as the Courts. Passing by all these ques-tsons, .and treating all the laws on the subject of crimes committed by slaves, as in force, there is enough, we think, in this record, to impel a reversal of the judgment of the Circuit Court.
The judgment will be reversed, and the prisoner discharged.